IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CR-123
No. 7:26-CV-22

| | | |
|---|---|---|
| ROBERTO HERNANDEZ-ALDAMA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On July 25, 2018, Roberto Hernandez-Aldama ("Hernandez-Aldama" or "petitioner") was indicted for illegal reentry of an alien removed subsequent to a felony conviction in violation of 8 U.S.C. §§ 1326(a) and (b)(1) ("illegal reentry charge"). See Presentence Investigation Report ("PSR") [D.E. 124] ¶ 1. On October 18, 2018, without a written plea agreement, Hernandez-Aldama pleaded guilty to the illegal reentry charge. See id. at ¶ 2; [D.E. 174] 6–7. On January 15, 2019, Hernandez-Aldama was charged in a superseding indictment with conspiracy to distribute and possession with intent to distribute five kilograms of more of cocaine in violation of 21 U.S.C. § 846 ("drug charge") [D.E. 74]. On May 1, 2019, without a written plea agreement, Hernandez-Aldama pleaded guilty to the drug charge. See PSR ¶ 6; [D.E. 171] 5.

At Hernandez-Aldama's initial sentencing hearing, the Honorable Terrence W. Boyle overruled Hernandez-Aldama's objections to his drug weight and criminal history score, and sentenced him to 180 months' imprisonment on the drug charge and 120 months' concurrent imprisonment on the illegal reentry charge. See [D.E. 166] 9, 11, 13, 18–19; [D.E. 151]. That sentence was within his advisory guideline range of 168 to 210 months' imprisonment. See United

States v. Hernandez-Aldama, No. 19-4763, 2022 WL 1114370, at *1 (4th Cir. Apr. 14, 2022) (per curiam) (unpublished) ("Hernandez-Aldama I"); PSR ¶ 95. Hernandez-Aldama appealed. See [D.E. 152]. The United States Court of Appeals for the Fourth Circuit agreed with Judge Boyle's resolution of the drug weight issue but vacated Hernandez-Aldama's sentence and remanded for resentencing. See Hernandez-Aldama I, 2022 WL 1114370, at *1–4.

On February 22, 2023, the court held a resentencing hearing and again calculated an advisory guideline range of 168 to 210 months' imprisonment. See [D.E. 236] 4. The court considered the factors under 18 U.S.C. § 3553(a) and sentenced Hernandez-Aldama to 170 months' imprisonment on the drug charge and 120 months' concurrent imprisonment on the illegal reentry charge. See id. at 11–13; [D.E. 228]. On February 25, 2025, the Fourth Circuit affirmed Hernandez-Aldama's sentence. See United States v. Hernandez-Aldama, No. 23-4136, No. 23-4140, 2025 WL 602753, at *3 (4th Cir. Feb. 25, 2025) (per curiam) (unpublished); [D.E. 244].

On February 12, 2026, Hernandez-Aldama moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [D.E. 248] and filed a memorandum in support [D.E. 249]. On that same date, the case was reassigned to the undersigned. See [D.E. 250]. On March 25, 2026, the government moved to dismiss Hernandez-Aldama's section 2255 motion [D.E. 254] and filed a memorandum in support [D.E. 255]. See Fed. R. Civ. P. 12(b)(6). On April 2, 2026, Hernandez-Aldama responded in opposition [D.E. 256] and filed a memorandum [D.E. 257]. As explained below, the court grants the government's motion to dismiss, dismisses Hernandez-Aldama's section 2255 motion, and denies a certificate of appealability.

I.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual

sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Hernandez-Aldama must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quotation omitted). "An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or earlier hearings], and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (quotation omitted). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second guess counsel's assistance after conviction or an adverse sentence. The question is whether an attorney's representation amounted to incompetence under the prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (quotation and citations omitted).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 468 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional prejudice requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions more likely than not altered the outcome; but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest cases.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112.

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (citation omitted). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up). "Courts should not

upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. at 369. "Judges instead should look to the contemporaneous evidence to substantiate a defendant's expressed preferences." Id.

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58. "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (quotation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (quotation omitted).

Hernandez-Aldama alleges that his counsel violated his Sixth Amendment right to effective assistance of counsel. See [D.E. 248] 5–6. He argues that (1) his guilty plea was not knowing, intelligent, or voluntary because of his defense counsel's deficient performance, and (2) his defense counsel deficiently failed to request a relevant conduct hearing. See id.

In attacking his guilty plea, Hernandez-Aldama contends that defense counsel for his illegal reentry charge and defense counsel for the drug charge "may have failed to convey formal, non-cooperation-based plea offers extended by the Government." [D.E. 249] 8–9 (emphasis added). But Hernandez-Aldama fails to plausibly allege that defense counsel failed to inform him of a formal plea offer. Under the Sixth Amendment, defense counsel has a duty only to communicate the prosecution's "formal offers" of plea agreements. Frye, 566 U.S. at 145. Hernandez-Aldama does not allege when a plea offer was made, the terms of the alleged offer, or that the government even desired to enter plea negotiations. A defendant has no federal right to a plea offer, and defense counsel had no duty or ability to force the government to offer one. See id. at 148; Weatherford v.

Bursey, 429 U.S. 545, 561 (1977); United States v. Flood, — F.4th —, 2026 WL 2342536, at *4–8 (4th Cir. 2026). Speculating that defense counsel "may" have violated the Sixth Amendment does not suffice. See, e.g., Iqbal, 566 U.S. at 677–78; Twombly, 550 U.S. at 553–60, 570; Flood, 2026 WL 2342536, at *4–7; Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970). Thus, Hernandez-Aldama has not plausibly alleged deficient performance.

In attacking his guilty plea, Hernandez-Aldama also alleges defense counsel "may have affirmatively misadvised [him] that cooperation was a prerequisite to engaging in plea negotiations with the Government." [D.E. 249] 9. According to Hernandez-Aldama, defense counsel advised Hernandez-Aldama that he "should cooperate with the prosecution or risk receiving a sentence that would result in [Hernandez-Aldama] spending the remainder of [his] life in prison." [D.E. 249-1] ¶ 9. According to Hernandez-Aldama, defense counsel also explained that if Hernandez-Aldama did not provide "substantial assistance, the prosecution would have no reason to negotiate a plea agreement with [him]," and that "if [he] could not offer substantial assistance . . . an open plea would be [the] best option." [D.E. 249-1] ¶¶ 9–10.

Defense counsel did not perform deficiently in giving Hernandez-Aldama this advice. Defense counsel never told Hernandez-Aldama that he must cooperate to negotiate a plea agreement with the government. Rather, defense counsel explained the realistic consequences Hernandez-Aldama could expect if he did not cooperate, namely the unlikelihood that the government would offer a plea agreement. See id. at ¶ 9. Counsel suggested the open plea as Hernandez-Aldama's best option given Hernandez-Aldama's reluctance to cooperate. See id. at ¶ 10.

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691. Defense counsel

understood that Hernandez-Aldama did not want to cooperate and appropriately advised him based on Hernandez-Aldama's desires and defense counsel's "insights borne of past dealings" with the prosecutor and the court. Premo v. Moore, 562 U.S. 115, 125 (2011); Strickland, 466 U.S. at 691; Flood, 2026 WL 2342536, at *4–7. Thus, Hernandez-Aldama has not plausibly alleged deficient performance.

Alternatively, Hernandez-Aldama has not plausibly alleged prejudice. He fails to plausibly allege that the government would have negotiated a non-cooperation plea agreement had counsel advised him differently. See, e.g., Frye, 566 U.S. at 148; Flood, 2026 WL 2342536, at *7–10; Mitchell v. United States, No. 5:16-CR-7, No. 5:18-CV-301, 2018 WL 4924010, at *2 (E.D.N.C. Oct. 9, 2018) (unpublished).

In attacking his guilty plea, Hernandez-Aldama alleges that defense counsel never "explained the impact of relevant conduct" arising from his possession of methamphetamine on his "likely sentencing exposure," thereby making an open plea "perilous." [D.E. 249] 9, 11. According to Hernandez-Aldama, "[a]ny reasonably competent attorney would have sought to limit Mr. Hernandez-Aldama's sentencing exposure by negotiating to exclude relevant conduct that was far outside the scope of the charged offenses." Id. at 11.

Defense counsel did not perform deficiently. Defense counsel knew that Hernandez-Aldama was reluctant to cooperate. Defense counsel also knew that the courts in this district do not approve binding plea agreements under Federal Rule of Criminal Procedure 11(c)(1)(C). Rather, any stipulations or recommendations in a plea agreement about relevant conduct or any other sentencing topic would be non-binding under Rule 11(c)(1)(B). See Fed. R. Crim. P. 11(c)(1)(B). Thus, counsel could not negotiate a plea agreement to exclude what Hernandez-Aldama admits is relevant conduct. See [D.E. 249] 11; U.S.S.G. § 1B1.3; PSR ¶¶ 32, 38–40.

Hernandez-Aldama's best option was an open plea and an objection to the methamphetamine drug weight.

At the first sentencing hearing, defense counsel objected to including the methamphetamine drug weight. See [D.E. 166] 3–4. Judge Boyle overruled the objection, which defense counsel could not control. See id. at 9. Moreover, Judge Boyle had the authority to consider Hernandez-Aldama's relevant conduct contained in the PSR. See, e.g., United States v. Fowler, 58 F.4th 142, 151 (4th Cir. 2023); cf. U.S.S.G. § 1B1.3; Fed. R. Crim. P. 32(i)(3). Notably, the Fourth Circuit affirmed Judge Boyle's ruling on the methamphetamine drug weight. See Hernandez-Aldama I, 2022 WL 1114370, at *3. Hernandez-Aldama fails to plausibly allege deficient performance in defense counsel's advice about the open plea.

Alternatively, Hernandez-Aldama fails to plausibly allege prejudice. Hernandez-Aldama contends that, if he had known the impact relevant conduct from the methamphetamine would have on his sentence, he would have proceeded to trial if the plea negotiations failed. See [D.E. 249-1] ¶ 12. Hernandez-Aldama's contention that he would have insisted on going to trial if plea negotiations about relevant conduct failed is entirely speculative. Hernandez-Aldama alleges no "credible contemporaneous evidence" that but-for defense counsel's advice, he would have insisted on going to trial absent a plea agreement about relevant conduct, or that a decision to go to trial would have been rational. United States v. Yelizarov, 140 F.4th 597, 605 (4th Cir. 2025), cert. denied, 146 S. Ct. 345 (2025); see Lee, 582 U.S. at 364–65, 369; Hill, 474 U.S. at 59. Hernandez-Aldama does not plausibly allege that he indicated to his defense counsel a desire to go to trial, and the court need not accept his post hoc rationalizations. See, e.g., Lee, 582 U.S. at 364–65, 369; Yelizarov, 140 F.4th at 605. Notably, at Hernandez-Aldama's Rule 11 hearings for the drug charge and illegal reentry charge, the court confirmed that Hernandez-Aldama was

competent and understood the charges, the penalties, the sentencing process, and all the rights he was waiving if he pleaded guilty. See [D.E. 171] 2–5; [D.E. 174] 4–6.

At his drug charge Rule 11 hearing, Hernandez-Aldama confirmed that he was satisfied with counsel's representation. See [D.E. 171] 3. The court confirmed Hernandez-Aldama's understanding that the mandatory minimum was 120 months' imprisonment and the statutory maximum was life imprisonment. See id. at 4–5. Hernandez-Aldama confirmed that he "perfectly" understood the rights he was waiving by pleading guilty. See id. at 3–4. The court reiterated the rights he was waiving, and Hernandez-Aldama confirmed that he understood the significance of pleading guilty and the charge. See id. at 4–5. The court confirmed that Hernandez-Aldama was pleading guilty of his own volition. See id. at 5. The court then found there was a factual basis to support the guilty plea to the drug charge. See id. at 5–8.

At his illegal reentry Rule 11 hearing, Hernandez-Aldama told the court he was satisfied with counsel's representation. See [D.E. 174] 5–6. The court confirmed Hernandez-Aldama's understanding that the statutory maximum was 120 months' imprisonment. See id. at 6. The court confirmed Hernandez-Aldama's understanding that he would be giving up his trial and jury rights by pleading guilty. See id. The court also confirmed that Hernandez-Aldama understood the charge and the penalties. See id. The court also found a factual basis to support the guilty plea to the illegal reentry charge. See id. at 7–8.

During the Rule 11 hearings, the court was not required to inform Hernandez-Aldama of the relevant conduct it would consider at sentencing. See Fed. R. Crim. P. 11(b). The court did, however, inform Hernandez-Aldama of the potential penalties associated with the drug charge (i.e.

ten years' imprisonment to life imprisonment) and the illegal reentry charge (i.e. up to ten years' imprisonment) before accepting his guilty plea. See [D.E. 171] 4–5; [D.E. 174] 6.

Hernandez-Aldama's sworn statements bind him. See, e.g., Yelizarov, 140 F.4th at 605 ("Generally, a court should dismiss a claim in a [section] 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy."). Hernandez-Aldama understood the general consequences of pleading guilty, and even if he was not fully aware of the specific effect relevant conduct and the methamphetamine would have on his advisory guideline range, as he now claims, it is not enough to show his guilty plea was involuntary. See, e.g., United States v. Ruiz, 536 U.S. 622, 629 (2002). Hernandez-Aldama's guilty plea was knowing, voluntary, and intelligent. Thus, Hernandez-Aldama's first claim fails.

In his second claim, Hernandez-Aldama asserts defense counsel performed deficiently by failing to request a hearing about relevant conduct. See [D.E. 249] 14. According to Hernandez-Aldama, without a hearing, he was deprived of the opportunity to cross-examine the case agent about his co-conspirators' testimony about the methamphetamine. See id. at 16–17. According to Hernandez-Aldama, if he had known about the relevant conduct, he would have "instructed [counsel] to request [ ] a hearing" to contest the testimony of his co-conspirators about the methamphetamine. [D.E. 249-1] ¶ 13.

Hernandez-Aldama got a hearing about the methamphetamine and relevant conduct. It is called a sentencing hearing. At the first sentencing hearing, Hernandez-Aldama objected to the PSR's inclusion of the methamphetamine that he possessed. See [D.E. 121] 3; [D.E. 166] 3–4. The government then presented evidence about the methamphetamine, including the case agent's testimony. See [D.E. 166] 4–8. Defense counsel then cross-examined the case agent about the

methamphetamine. See id. at 8–9. Thus, Hernandez-Aldama got the hearing he desires, and his claim fails.

Alternatively, Hernandez-Aldama has not plausibly alleged prejudice. Hernandez-Aldama does not allege any additional evidence about the methamphetamine to present at a sentencing hearing. Rather, he simply attacks the credibility of the case agent, who relied on some hearsay from cooperators. See [D.E. 249] 16–17; cf. [D.E. 166] 3–9. At a sentencing hearing, however, the court can "give weight to any relevant information before it, including uncorroborated hearsay" with "sufficient indicia of reliability." United States v. Wilkinson, 590 F.3d 259, 269 (4th Cir. 2010); see United States v. Mondragon, 860 F.3d 227, 233 (4th Cir. 2017); United States v. Powell, 650 F.3d 388, 392 (4th Cir. 2011); United States v. Bowman, 926 F.2d 380, 381 (4th Cir. 1991). Because the Federal Rules of Evidence (other than privilege) do not apply to sentencing proceedings, Hernandez-Aldama had no constitutional right to cross-examine the cooperators. See Fed. R. Evid. 1101(d)(3); United States v. Umana, 750 F.3d 320, 346 (4th Cir. 2014); Powell, 650 F.3d at 393–94; United States v. Bell, 667 F.3d 431, 441 (4th Cir. 2011); United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992); United States v. Johnson, 935 F.2d 47, 50 (4th Cir. 1991). The court had the authority to consider evidence it found credible about the methamphetamine as relevant conduct at Hernandez-Aldama's sentencing hearing. Thus, Hernandez-Aldama has failed to plausibly allege deficient performance or prejudice, and his second claim fails. See, e.g., Strickland, 468 U.S. at 687–96.

After reviewing Hernandez-Aldama's claims, the court finds that reasonable jurists would not find the court's treatment of Hernandez-Aldama's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a

certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

II.

In sum, the court GRANTS the government's motion to dismiss [D.E. 254], DISMISSES petitioner's motion to vacate [D.E. 248], and DENIES a certificate of appealability.

SO ORDERED. This 11 day of September, 2026.

JAMES C. DEVER III
United States District Judge